# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 05-140 (3) (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| VIRAJ DASS, | |
| Defendant. | |

Andrew R. Winter, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Viraj Dass, A-38795874, 5-C 211-B Steward Detention Center, P.O. Box 248, Lumpkin, GA 31815, for defendant.

Defendant Viraj Dass brought motions to vacate his criminal sentence under 28 U.S.C. § 2255, receive transcripts from a hearing, and stay his deportation, arguing ineffective assistance of counsel related to his guilty plea. His claim is based on *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), in which the Supreme Court concluded that attorneys must inform their clients of possible immigration consequences to guilty pleas. Dass contends that his attorney failed to inform him he might be deported if found guilty of a crime, and that if he had been so informed he would not have pled guilty. Although *Padilla* applies retroactively and Dass can establish ineffective assistance of counsel, his claim is barred by the statute of limitations and the Court denies his motions.

**BACKGROUND**

On June 7, 2005, a nine-count multi-defendant indictment was filed charging Dass, among others, with conspiracy to distribute, and possession with intent to distribute, more than 100 kilograms of a mixture of marijuana, possession of a firearm by a convicted felon, and aiding and abetting possession of a firearm in furtherance of a drug trafficking crime.  (Docket No. 104.)  On August 25, 2005, Dass pled guilty to two counts of the indictment pursuant to a plea agreement.  (Docket No. 157.)  The plea agreement included a provision that Dass knowingly, intelligently, and voluntarily waived his right to appeal any sentence other than an upward departure from the guideline range, or one calculated with an offense level greater than twenty-three.  (Plea Agreement ¶ 17.)  The Probation Office prepared a pre-sentence investigation report ("PSR") determining that Dass' total offense level was thirty-two, with a criminal history category of V, and a guidelines sentencing range of 188-235 months.  (PSR ¶ 71, 91, 149.)  The Probation Office reported that Dass is a permanent resident of the United States.  (PSR at F.3.)  The PSR also stated that Dass "is subject to removal proceedings due to the instant offense."  (PSR ¶ 118.)  On May 1, 2006, Dass was sentenced to eighty-four months' imprisonment, and five years of supervised release.   (Docket No. 182.)  The Sentencing Judgment was entered on May 25, 2006.  (Docket No. 190.)  Dass did not raise any objections to the PSR or his sentence prior to the present motions.

On October 4, 2010, Dass brought a motion for relief under 28 U.S.C. § 2255 to vacate his sentence, arguing that *Padilla* represented a change in existing law now requiring a criminal defense attorney to inform a client about the immigration

consequences of pleading guilty to a crime, which his attorney failed to do.  (Docket No. 219.)  Dass has also moved to receive transcripts from his "PSI hearing," and to stay his deportation pending the Court's determination on his motion to vacate.  (Docket Nos. 221, 222.)

## ANALYSIS

### I.     STANDARD OF REVIEW

Section 2255 of Title 28 provides persons in federal custody a limited opportunity to collaterally attack the constitutionality or legality of the sentence and conviction prescribed by the Court.  *See United States v. Addonizio*, 442 U.S. 178, 185 (1979); *Embrey v. Hershberger*, 131 F.3d 739, 740 (8th Cir. 1997).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice."  *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).  Section 2255 provides a mechanism for raising a claim of ineffective assistance of counsel after sentencing.  *United States v. Carlson*, 613 F.3d 813, 819 (8th Cir. 2010); *see also United States v. McAdory*, 501 F.3d 868, 872 (8th Cir. 2007) ("We ordinarily defer ineffective assistance of counsel claims to 28 U.S.C. § 2255 proceedings.").  To support a claim of constitutionally ineffective assistance of counsel, a defendant must demonstrate his counsel's performance was deficient and that he was prejudiced by the deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first prong of *Strickland*, a defendant must show his counsel's performance "fell

below an objective standard of reasonableness in that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would use under like circumstances." *United States v. Acty*, 77 F.3d 1054, 1059 (8th Cir. 1996) (internal quotation marks omitted). The "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689; *see also Burkhalter v. United States*, 203 F.3d 1096, 1098 (8th Cir. 2000). To satisfy the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. When the alleged deficient performance involves the plea process, the petitioner must prove "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL

Dass' motion to vacate is predicated on his assertion that *Padilla*, which was decided after his sentencing, provides a basis to succeed on a claim for ineffective assistance of counsel when he was not advised of the immigration consequences of accepting a plea agreement. To evaluate Dass' motion, the Court must first determine whether *Padilla* announces a new constitutional rule of criminal procedure, and whether it has a retroactive effect. The Court must then determine whether Dass has met both prongs of *Strickland*, and whether the statute of limitations applies. Although the Court

finds that *Padilla* does not announce a new constitutional rule of criminal procedure (allowing it to be applied retroactively) and that Dass can meet both prongs of *Strickland*, Dass' motion is barred by the one-year statute of limitations applicable to motions under 28 U.S.C. § 2255.

### A.    Retroactivity of *Padilla*

Dass argues that *Padilla* created a newly recognized right that is retroactively applicable to cases on collateral review.  The question of retroactivity for a new rule is governed by the test set forth in *Teague v. Lane,* 489 U.S. 288 (1989).  In *Teague*, the Supreme Court held that generally, new constitutional rules of criminal procedure will not apply to cases that have already become final before the rule is announced.  *Teague*, 489 U.S. at 310.  "[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final."  *Id.* at 301 (emphasis in original); *see also Whorton v. Bockting*, 549 U.S. 406, 416 (2007).  If a case announces a new constitutional rule of criminal procedure, the retroactivity analysis requires the Court to determine whether the new rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or represents a watershed rule of criminal procedure.  *Teague*, 489 U.S. at 307, 311 (internal quotation marks omitted).  A new rule applies retroactively only if it fits within one of those exceptions.  *Id.*

However, when the Supreme Court applies a well-established rule of law in a new **way** based on the specific facts of a particular case, it does not generally establish a new

rule.  *See Stringer v. Black*, 503 U.S. 222, 228-29 (1992) (where application of a prior rule of law did not "break new ground," it was not a new rule); *Amer v. United States*, No. 1:06CR118-GHD, 2011 WL 2160553, at *3 (N.D. Miss. May 31, 2011) (finding "that *Padilla* did not announce a 'new rule' but merely extended an old rule . . . . [T]he Sixth Amendment's right to counsel as delineated by *Strickland* and its progeny has not been altered but, rather, extended to include the affirmative duty to advise a noncitizen defendant of the immigration consequences of a criminal conviction.  The failure to so advise a client is *per se* constitutionally deficient representation.").   If the Court concludes that the Supreme Court has expanded upon an existing rule, then its decision applies retroactively.  *See Marroquin v. United States*, No. M-10-156, 2011 WL 488985, at *2 (S.D. Tex. Feb. 4. 2011).

In *Padilla*, the Supreme Court held "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation . . ." and that "[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence."  *Padilla*, 130 S. Ct. at 1482-83 (quotation marks omitted) (partially quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 323 (2001)). The Court further quoted from *St. Cyr*, noting "we have recognized that 'preserving the possibility of' discretionary relief from deportation . . . would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial."  *Id.* at 1483 (quotation marks and citations omitted).  Because *Padilla* was decided more than three years after Dass' conviction was final, the only way for it to apply to Dass is if it can be applied retroactively.

Courts considering the question of *Padilla*'s retroactive application have reached conflicting results. Some courts have found *Padilla* does not announce a new rule and is therefore retroactive.[1]  *See, e.g.*, *Amer*, 2011 WL 2160553, at *3; *United States v. Hubenig,* No. 6:03-mj-040, 2010 WL 2650625, at *5-8 (E.D. Cal. July 1, 2010) (concluding that the *Padilla* decision is applicable retroactively and observing that "[i]f the Court intended *Padilla* to be a new rule which would apply only prospectively, the entire 'floodgates' discussion would have been unnecessary"); *Al Kokobani v. United States,* Nos. 5:06-cr-207, 5:08-cv-177, 2010 WL 3941836, at *4-6 (E.D.N.C. July 30, 2010) (adopting reasoning from *Hubenig*); *Martin v. United States*, No. 09-1387, 2010 WL 3463949, at *3 (C.D. Ill. Aug. 25, 2010) (finding *Padilla* likely did not create a new rule under *Teague* and was therefore retroactively applicable); *People v. Bennett*, 903 N.Y.S.2d 696, 700 (N.Y. Crim. Ct. 2010) (retroactively applicable).  At least one court has characterized this as the "majority" position.  *See Marroquin*, 2011 WL 488985, at *2 ("[A] majority of courts have found that *Padilla* is simply the application of an old rule, concluding that *Padilla*'s holding applies retroactively . . . .  [T]his Court joins the majority of other courts that have considered the issue and concludes that *Padilla* does not announce a new rule, that it is an extension of the rule in *Strickland* . . . requiring effective assistance of counsel[], and that its holding should apply retroactively." (citation omitted)).

---

[1] The Eighth Circuit has yet to rule on whether *Padilla* should be applied retroactively, confining its discussion of the issue to a footnote stating it would be inappropriate to address the issue in a case involving the withdrawal of a guilty plea.  *United States v. De Oliveira*, 623 F.3d 593, 597 n.1 (8th Cir. 2010).

Other courts have disagreed, concluding *Padilla* cannot be retroactive. *See, e.g.*, *Gacko v. United States,* No. 09-CV-4938, 2010 WL 2076020, at *3 (E.D.N.Y. May 20, 2010) (no retroactive effect); *United States v. Gilbert,* No. 2:03-cr-349, 2010 WL 4134286, *3 (D.N.J. Oct. 19, 2010) (finding that *Padilla* is a new constitutional rule and should not be applied retroactively); *Haddad v. United States,* Nos. 07-cv-12540, 97-cr-80150, 2010 WL 2884645, *6 (E.D. Mich. Jul. 20, 2010) (finding it "unlikely that *Padilla* will be made retroactive to convictions under collateral attack"); *People v. Kabre,* 905 N.Y.S.2d 887, 899 (N.Y. Crim. Ct. 2010) (same).

In *Hubenig*, the court noted that the Supreme Court has recently issued a number of opinions applying the *Strickland* test in a variety of factual contexts, none of which were considered new rules under *Teague*.  2010 WL 2650625, at *6 (citing *Rompilla v. Beard*, 545 U.S. 374, 389-90 (2005) (failing to examine defendant's prior conviction file fell below level of reasonable performance) and *Wiggins v. Smith*, 539 U.S. 510, 533 (2003) (stating that *Strickland* does not require counsel to investigate every conceivable line of mitigating evidence)).  *See also Marroquin*, 2011 WL 488985, at *7.  The court further interpreted *Padilla* as follows:

> [T]he Supreme Court signaled that it understood its holding in *Padilla* would apply retroactively.  The Court stated that it had "given serious consideration" to the argument that its ruling would open the "floodgates" to new litigation challenging prior guilty pleas.  The Court minimized the "floodgates" concern by stating that a petitioner would have to show not only that his counsel's performance fell below professional standards, but also that he was prejudiced by the deficient performance.  If the Court intended *Padilla* to be a new rule which would apply only prospectively, the entire "floodgates" discussion would have been unnecessary.

*Hubenig*, 2010 WL 2650625, at *7 (citations omitted).  This reasoning is persuasive and consistent with the overall direction of *Padilla*.  The Court finds that the holding in *Padilla* **was** dictated by precedent existing at the time Dass' conviction became final, as the Supreme Court predicated a substantial amount of its holding on existing professional standards, noting that "[w]e **long** have recognized that prevailing norms of practice as reflected in American Bar Association standards and the like are guides to determining what is reasonable."[2]  *Padilla*, 130 S. Ct. at 1482 (collecting citations for professional standards) (quotation marks and alterations omitted, emphasis added).  Further, as Justice Alito concluded, "any competent criminal defense attorney should appreciate the extraordinary importance that the risk of removal might have in the client's determination whether to enter a guilty plea."  *Id.* at 1494 (Alito, J., concurring); *cf. id.* at 1480-87 (discussing the importance of attorneys advising their noncitizen clients of immigration consequences to plea agreements).  This suggests that the rule – that defense attorneys must inform their clients of immigration consequences to guilty pleas – is not new, but is and has always been a baseline of competence.  The Court agrees that

> [i]n rejecting the lower courts' approach to the ineffective assistance of counsel claims that allege misinformation on the risk of deportation, or lack thereof, the [Supreme] Court did not announce a new rule.  *Padilla* simply found counsel has an obligation to inform a noncitizen defendant of the immigration consequences of his guilty plea through a *Strickland* analysis based on "[t]he weight of prevailing professional norms" that "[f]or at least 15 years . . . have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea."

---

[2] Further bolstering the argument that *Padilla* is explicating an existing rule is the Supreme Court's repeated reference to its own precedent:  "[w]e **long** have recognized . . ."; "[w]e too have **previously** recognized . . . ."  *Padilla*, 140 S. Ct. at 1482-83 (emphasis added).

*Marroquin*, 2011 WL 488985, at *7 (quoting *Padilla*, 130 S. Ct. at 1482, 1485).  Because *Padilla* did not announce a new rule, it applies retroactively, requiring the Court to analyze Dass' attorney's conduct under the two-prong *Strickland* test.

### B.    *Strickland* prongs

In *Padilla,* the Court held that a defendant satisfies the first prong of *Strickland* if an attorney fails to inform a non-citizen client that he or she faces a risk of deportation before entering a guilty plea.  130 S. Ct. at 1483-84.  Dass' attorney did not inform his non-citizen client of the risk of deportation before entering his guilty plea.  Pursuant to *Padilla*, the first prong of *Strickland* has been met.  *See id.*; (*See* Docket No. 219.)  The remaining issue is whether Dass has adequately demonstrated prejudice, the second prong of *Strickland*.  *See Strickland*, 466 U.S. at 693 ("[I]neffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice.").

The facts of this case are nearly identical to those at issue in *Padilla* and *Amer*.  *See Padilla*, 130 S. Ct. at 1477-78 (petitioner was a lawful permanent resident of the United States who pled guilty to transporting drugs and whose attorney did not discuss immigration consequences of pleading guilty); *Amer*, 2011 WL 2160553, at *1 (petitioner was a lawful permanent resident of the United States who pled guilty to distributing drugs and whose attorney failed to advise him of the immigration consequences of doing so).  Dass is an immigrant, having come to the United States in 1985 after residing for some time in Canada.  (PSR ¶ 117.)  Dass is presently a legal

permanent resident of the United States.  (*Id.* ¶ 118.)  As in *Amer*, Dass signed a plea agreement expressly waiving all appeals and collateral attacks of his conviction and sentence on drug charges.  *See Amer*, 2011 WL 2160553, at *3.  Like Padilla and Amer, Dass now faces the possibility of removal from the United States for the offenses for which he is presently incarcerated, and states that had he been aware of the immigration consequences of his decision to plead guilty, he would have opted for a trial.  *Padilla*, 130 S. Ct. at 1478 ("[Padilla] alleges that he would have insisted on going to trial if he had not received incorrect advice from his attorney."); *Amer*, 2011 WL 2160553, at *4 ("Petitioner has . . . satisfied the court that had he been aware of the risk of removal he would have elected a trial.").  Dass' attorney filed a letter with the Court stating that he did not discuss the immigration consequences of the plea with Dass.  (Docket No. 219 ("The issue of deportation never came up as best I can recall.").)

The government contends that Dass' assertion that he would have gone to trial if his attorney talked with him about deportation is unsupported by evidence, undermining a determination of prejudice sufficient to meet the second prong of *Strickland*.  Further weighing against a finding of prejudice is that all of Dass' codefendants pled guilty at or around the same time he did and that the plea agreement represented a substantially lesser sentence than the guideline range.

Although accorded only minimal weight, Dass' affidavit states that his attorney never raised the issue of deportation, and he was told not to worry about the immigration consequences of his plea.  (Docket No. 219.)  Far stronger support for Dass' assertion that he would not have pled guilty are Dass' family ties and lack of connection to

Guyana.[3]  Dass came to the United States while still an infant, and has spent his entire

life in Canada and the United States.  Dass has at least four children, ages 3, 6, 10, and

11, and is currently in a relationship with a woman who has a 5-year-old daughter, all of

whom reside in Minnesota.  (PSR ¶¶ 120-123.)  These circumstances provide compelling

support for Dass' assertion that he would not have pled guilty if he knew he could be

removed from the United States.  The familial and historical connections Dass has with

this country suggest that knowledge of deportation would have been an important factor

in determining whether to plead guilty.  The Court finds there is sufficient evidence

supporting a reasonable probability that being informed of the immigration consequences

of a guilty plea would have caused Dass to plead not guilty and insist on a trial.  Thus,

Dass has established prejudice under the second prong of *Strickland*, and has met the

standard to demonstrate ineffective assistance of counsel.

### C.      Statute of Limitations

The government argues that even if *Padilla* did not announce a new constitutional

rule of criminal procedure, Dass' motion is untimely.  Section 2255(f)(1) requires

criminal defendants to file a motion within one year from the date on which the judgment

of conviction became final.  Section 2255(f)(1)-(4) provides exceptions to the statute of

limitations, including that the statute of limitations can be tolled from "the date on which

---

[3] The Court has not been provided with documentation regarding to what country Dass is likely to be removed, but the Court assumes it will be Guyana, his country of birth.  Regardless of where he will be deported, all evidence suggests that Canada and the United States are the primary countries in which Dass has lived or has immediate family, which is the only salient point for this analysis.

the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made applicable to cases on collateral review . . . ." 28 U.S.C. § 2255(f)(3). The government suggests that if no new rule was announced, then no right has been "newly recognized" and the exception does not operate, rendering Dass' motion untimely. The Court finds that this is the correct interpretation of § 2255(f)(3), and it would be illogical to determine *Padilla* is **not** a new constitutional rule of criminal procedure, but **is** a right newly recognized by the Supreme Court. Thus, the limitations period commenced one year from the date Dass' conviction became final, as provided in § 2255(f)(1). Dass' Judgment and Commitment Order was entered on May 25, 2006, and his conviction became final that day. (*See United States v. James*, 05-cr-140 (D. Minn.), Docket No. 190); Fed. R. App. P. 4(b)(1) (2005). Because Dass' pending § 2255 motion was not filed until October 4, 2010, it falls well outside the one-year statute of limitations as measured by § 2255(f)(1).

Dass argues that even if the statute of limitations applies, the Court should apply equitable tolling to save his claim. However, the one-year statute of limitations may be extended under the equitable tolling doctrine only if the petitioner can prove that (1) he has been pursuing his rights diligently and that (2) some extraordinary circumstance stood in his way. *Walker v. Norris*, 436 F.3d 1026, 1032 (8th Cir. 2006) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Case law generally holds that "extraordinary circumstances" in the equitable tolling doctrine specifically refer to events or conduct which inhibits a petitioner's ability to file a timely habeas petition; it does not refer to consequences of attorney misconduct from the criminal proceeding. *See, e.g., Shannon v.*

*Newland*, 410 F.3d 1083, 1089–90 (9th Cir. 2005).  Dass has not alleged conduct by his attorney inhibiting his ability to file a timely motion under § 2255, thus equitable tolling can \not apply, and his motion under § 2255 is barred by the statute of limitations.

## ORDER

Based on the foregoing and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Docket No. 208] is **DENIED**.

2.      Defendant's Indigent Request for Transcripts Pursuant to 28 U.S.C. § 753(F) Production of Documents Rules 6(B) and Habeas Rule 7 [Docket No. 221] is **DENIED as moot**.

3.      Defendant's Motion to Stay Deportation Until Court Ruling [Docket No. 222] is **DENIED as moot**.


DATED:  July 14, 2011                           s/ John R. Tunheim
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                           United States District Judge